**Law Offices of Ellen C. Dove**
Ellen C. Dove   SBN 64034
5325 Elkhorn Blvd., #160
Sacramento, CA  95842
Telephone (916) 331-0111
Facsimile (916) 726-8576
Email edove3136@aol.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN L. LORAIN, | ) Case No.:  11-cv-04934 JCS |
| | ) |
| Plaintiff, | ) **AMENDED NOTICE OF MOTION AND** |
| | ) **MOTION FOR DECLARATORY JUDGMENT** |
| | ) **WITH SUPPORTING MEMORANDUM OF** |
| vs. | ) **POINTS AND AUTHORITIES** |
| | ) |
| SALESFORCE.COM, a corporation | ) |
| | ) Hearing Date: __Dec. 2, 2011 |
| Defendant. | ) Time:          9:30 am |
| | Courtroom:      15th Floor |

**PLEASE TAKE NOTICE** that on  December 2, 2011, at  9:30 am or as soon thereafter as the matter may be heard, in the above-captioned Court, Plaintiff STEVEN L. LORAIN will and does hereby move this Court for an order declaring him entitled to  medical insurance coverage under COBRA for 18 months from August 12, 2011, with an extension of 11 more months thereafter.

This motion is brought pursuant to 29 U.S.C.A. § 1163, *et seq.* as the action of defendant company deprived plaintiff of due process and his rights under the COBRA legislation.

This motion is based on this notice, the accompanying memorandum of points and authorities and other records on file in this mater, including the Complaint for declaratory relief filed herein.

**MOTION**

MEMORANDUM OF POINTS AND AUTHORITIES

INTRODUCTION

Comes now the Plaintiff, Steven Lorain, and moves this Court for a declaratory judgment that his termination was the singular "qualifying event" and the only qualifying event triggering his right to receive the benefits to which he is entitled arising from his employment with Defendant, as defined under the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA); 29 U.S.C.A. § 1163, *et seq.* (2010). In the alternative if this Court declines to declare as Mr. Lorain moves, Mr. Lorain then moves this Court to declare that Defendant's own health plan determining that Mr. Lorain was "disabled" *de facto* satisfies the Social Security Administration disability determination requirement delineated in 29 U.S.C. 1162 (2)(viii) (2010); and therefore this Court should declare that Plaintiff is entitled to an 11-month disability extension of COBRA continuation coverage.

## **Legal Standard**

### A. Declaratory Judgment

Pursuant to 28 U.S.C. §§2201(a) (2010):

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force of a final judgment or decree and shall be reviewable as such.

The facts present an actual controversy relating to the legal rights and duties of the parties herein.  Plaintiff requires an early determination, as he will be without medical coverage and without the ability to obtain any on December 31, 2011.  Plaintiff cannot and should not be required to wait until January 1, 2012, when he is without coverage to assert the defendant's, now only anticipated, breach.

### B. COBRA Coverage

Under the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), an employer is obligated to provide an employee who has experienced a "qualifying event" with health coverage which is identical to the coverage provided to its employees who have not experienced such an event. *See* 29 U.S.C. § 1162, *et seq.* (2010). This coverage is called "continuation coverage" and it must

continue for eighteen months after the date of the qualifying event, termination of employment. 29 U.S.C.A. § 1162, *et seq.* (2010).  There is nothing in the Act prohibiting an employer, especially a self insuring one, from providing additional continuation coverage.

A termination of employment is a qualifying event. 29 U.S.C.A. § 1163, *et seq.* (2010).  If an employee experiences a reduction in hours, this can also trigger the employer's obligation to provide continuation coverage, as long as the reduction in hours is not immediately followed by a termination. *See* 26 C.F.R. § 54.4980-4(e) (2010).  However, plaintiff contends this provision does not or should not apply to him as he did not experience a non-discriminatory employer-initiated reduction in hours.  Other employees in his work category were not furloughed and they did not experience a reduction in hours.  The sole reason for his involuntary and complete absence from the workplace was his need to heal from incisions from corneal transplant surgery on his right eye.

Initially he was absent from the workplace during a period of disability following his eye surgery on January 21, 2010.  Just prior to his early post-surgical return at the beginning of March 2010, he was informed he could only return to his regular position if he were able to work at 100%. To emphasize this, within a week of his return to the workplace, he was provided an unfair and unlawful performance review that deliberately failed to take into consideration his advancing pre-surgical visual disabilities during the measure period.  Failure of an employee to achieve minimum annual sales goals however, is not a "qualifying event" under COBRA. *See Hales v. Life Ins. Co. of Alabama*, 994 F. Supp. 756, 759 (S.D.Miss. 1997).  Plaintiff contends the type of disability he experienced is not a qualifying event under 26 C.F.R. § 54.4980-4(e) (2010), despite any exemplary language suggesting to the contrary.

Under the Act an employer must notify the administrator of the group health care plan of the occurrence of a qualifying event within thirty days. 29 U.S.C. § 1166(a)(2) (2010). Then, the administrator has fourteen days to notify the qualified beneficiary of his right to continue coverage. 29 U.S.C. § 1166(a)(4) (2010). The employee then has sixty days to accept the continuation coverage or lose all rights to benefits. 29 U.S.C. § 1162(3). To date defendant has notified plaintiff of his right to COBRA coverage, but it has failed to provide the time-triggering application packet or election opportunity.

Additionally, the terminated employee is still required to pay for the continuation coverage. *See* 29 U.S.C.A. § 1162(3) (2010). If the employer is self-insured, the applicable premium for any period of continuation coverage of qualified beneficiaries shall be equal to a reasonable estimate of

the cost of providing coverage for such period for similarly situated beneficiaries which is determined on an actuarial basis, and takes into account such factors as the Secretary of Labor may prescribe in regulations, or if the plan administrator elects, the cost to the plan for similarly situated beneficiaries for the same period occurring during the preceding twelve months adjusted for inflation/deflation. *See* 29 U.S.C.A. § 1164 (2) (2010).

**C. The Americans with Disabilities Act**

In amending The Americans with Disabilities Act (ADA), Congress found that "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination..." 42 U.S.C. § 12101(a) (2008). The 2008 Amendments to the ADA also reiterated that among the original purposes of the ADA were to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities and clear, strong, consistent, enforceable standards addressing discrimination by reinstating a broad scope of protection to be available under the ADA.**"** 42 U.S.C. § 12101(b)(1) (2008).  If another federal law, such as COBRA, provides lesser protection to a disabled person, the ADA's higher standard prevails. *See* Appendix to 29 C.F.R. § 1630.1(c) (2011).

The ADA prohibits employers from discriminating against a "qualified individual" with a disability because of the disability of such individual in regard to discharge and other, terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a) (2008). The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds. 42 U.S.C. § 12111(8) (2008). Plaintiff is a qualified individual entitled to protection from discrimination.

Reasonable accommodations may include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111 (9)(2008).

In order to make a *prima facie* showing of discrimination under the ADA, a plaintiff must show he suffers from a  "physical or mental impairment that substantially limits one or more major life activities" *See* 42 U.S.C. § 12102(1)(a) (2008). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, . . . and working." 42 U.S.C. § 12102(2)(a) (2008).  Thus plaintiff, with his severe temporary visual impairment, is a qualified individual and disabled for purposes of the Americans with Disabilities Act because he is severely limited in the major life activities of caring for himself, performing manual tasks, seeing and working. Mr. Lorain was a qualified individual for ADA purposes because he could perform the essential job functions with a reasonable accommodation of being afforded more time to complete his work, or being provided an assistant or a reader.

**D. Special Rule for Disability**

In the case of a qualified beneficiary who is determined, under Title II or XVI of the Social Security Act, to have been disabled at any time during the first sixty days of continuation coverage under this part, any reference in clause (i) or (ii) to 18 months is deemed a reference to twenty-nine months, but only if the qualified beneficiary has provided notice of such determination under section 1166(3) of this title before the end of such eighteen months.  29 U.S.C. § 1162(2)(viii) (2010).

However, when an employer failed to notify a terminated employee of the availability of a continuation coverage extension by reason of disability, the employee's subsequent disability determination obligations were relaxed. *See Poole v. Monmouth College*, 603 A.2d 118, 122-23 (N.J.Super.Ch. 1991).  Furthermore, an SSA determination is not legal authority. *See Martelon v. Colo. Dept. of Health Care Policy and Financing*, 124 P.3d 914, 917 (Colo. App. 2005). "Such a determination is more accurately characterized as evidence that, depending on the context, may be conclusive or persuasive on the issue of disability." *Id*. In this case there is no question of Mr. Lorain having a disability.

Plaintiff has been determined by his private disability provider to be disabled.  He contends the formal determination by his private carrier is a reasonable equivalent for COBRA medical coverage extension purposes, and thus it should trigger the eleven month add on and allow him 29 months of COBRA continuation coverage following his termination.

### Analysis

**A.  There is an actual controversy present because Plaintiff and Defendant dispute the date the COBRA "qualifying event" occurred.**

In the instant case, there is an actual controversy because Defendant asserts it has no legal obligation to provide COBRA health insurance benefits to Mr. Lorain after December 31, 2011. Mr. Lorain respectfully requests this Court to declare his interpretation of "qualifying event," his termination, is within the letter and spirit of the Americans with Disabilities Act. By so doing, Plaintiff seeks to have this Court declare August 10, 2011, the effective date of his termination, is the date of the "qualifying event" under COBRA and therefore his COBRA continuation coverage should extend at least eighteen months therefrom.

**B.  For the purpose of COBRA continuation coverage, Mr. Lorain's termination was the only "qualifying event."**

Mr. Lorain has been severely temporarily visually impaired and was disabled for purposes of the ADA prior to his wrongful termination by Defendant.  Determination that Plaintiff's medical condition subjected him to a qualifying event in June 2010, while he was on a temporary disability absence prior to notification of his termination to become effective on August 10, 2011, would be in contravention of the letter and spirit of the Americans with Disabilities Act (ADA).

Mr. Lorain had eye surgery on both eyes, about one year apart, and subsequently had a less than optimal recovery. In fact, his vision has been severely impaired in both eyes. After his first surgery he was anxious to return to work but was told he could only return when he was "100%." He could have returned with reasonable accommodations that could have included a reader, a speaking program on his computer, and most importantly, a removal of time constraints upon him to complete his tasks.  Although not 100%, he did return briefly, but could not work without any accommodation.

As a further necessary accommodation, Mr. Lorain requested the damaging and discriminatory evaluation be withdrawn so his performance would not be evaluated or would only be evaluated with consideration to his visual impairment and the time it would take to complete usual production modules while he healed more fully and/or could benefit from new contact lenses. Just before his recent termination, he had requested his employer to permit him to return with the only accommodation being a suspension of deadlines so he could work at his own pace and take needed breaks when his eyes were strained, painful or produced headaches. This request was

denied. When he was fired he was told his disability had lasted longer than the company could accept.

Moreover, to allow Defendant to use the ADA as a sword to prematurely defeat Mr. Lorain's right to COBRA continuation benefits, rather than as the shield it is supposed to provide to disabled individuals to provide equality, would be contrary to the letter and spirit of the law. As discussed above, the ADA was passed and later amended to provide "a clear and comprehensive national mandate for the elimination of discrimination" and "clear, strong, consistent, enforceable standards addressing discrimination" by reinstating a broad scope of protection to disabled persons. It would be unjust to punish a disabled employee twice for the same disability. Defendant already punished him once by erroneously prematurely terminating his group coverage and imposing the requirement that he pay inflated self-insured rates for COBRA coverage. Defendant again is attempting to punish Mr. Lorain by claiming his right to the continuation coverage he so desperately needs to pay for his ongoing medical expenses will expire a few months after his wrongful termination, before he will surely be fully healed and able to seek other employment.

Defendant itself recognized the day Defendant terminated Mr. Lorain was the date of the qualifying event for purposes of COBRA. Defendant sent Plaintiff a notice of his right to elect continuation coverage under COBRA on August 10, 2011, with its termination letter. Therefore, any claim by Defendant that another "qualifying event" occurred prior to this date is both contrary to its own statement and grossly unfair.

Moreover, like the plaintiff in *Hayes*, who the court determined did not experience a "qualifying event" simply because he did not meet annual sales goals, so too Mr. Lorain did not experience a "qualifying event" when, lacking needed accommodation, and he was unable to achieve any productivity following his surgeries. Therefore, this Court should declare that any events prior to his termination were not "qualifying events" for COBRA purposes, especially in light of defendant's culpable role in Mr. Lorain's absence from the workplace.

Mr. Lorain is not asking for a free pass, nor is he attempting to game the system. He is simply trying to maintain his health insurance for a statutory period — health insurance that is essential and unobtainable in any other manner. Mr. Lorain is willing to pay for these benefits, even at elevated rates, by virtue of the fact that Defendant is self-insured. The fact Defendant is self-insured likely evidences its financial motive to keep older, less healthy employees off the rolls of its health plan.

However, to allow a self-insured company to prematurely remove a disabled or sick employee from its rolls in the interest of pecuniary gain is not only unconscionable, it is in direct contravention of the Americans with Disabilities Act, which prevents discrimination against disabled individuals in regard to the terms, conditions, or benefits of employment, as well as related state laws under **Cal. Government Code § 12490** *et seq.*

Therefore, this Court should declare Mr. Lorain's termination from Defendant was the first and only "qualifying event" he experienced under COBRA and thus, he is entitled to eighteen months of continuation coverage from the date of his termination.

**Even if this Court declares his "qualifying event" took place prior to Mr. Lorain's termination, this Court should** extend **Mr. Lorain's COBRA coverage at least another eleven months based upon a determination of disability by his own health insurance plan.**

Mr. Lorain has been receiving disability income payments from Hartford Insurance under a company-sponsored policy he purchased and paid for.  He paid the premiums without significant contribution from his employer.  In the event this Court does not adopt Mr. Lorain's proposed interpretation of his termination being the "qualifying event" and resultantly deprives him of the COBRA continuation coverage he so desperately needs, Mr. Lorain respectfully requests his continuation coverage be extended an additional eleven months pursuant to 29 U.S.C. § 1162(2)(viii) discussed *supra*.

The provision for the extension of COBRA coverage an additional eleven months COBRA requires a determination of disability.  The statutory language names the Social Security Administration (SSA) as the expected determining entity.  For Mr. Lorain, who applied for this determination on April 13, 2011, at the direction of Hartford, that determination has not yet been made.  The interests of justice would suggest this Court declare the determination made by plaintiff's disability insurance provider, Hartford, in January, 2010, finding Mr. Lorain was disabled by his eye surgery and commencing to pay him benefits, is sufficient to satisfy this requirement.  The express purpose of the disability determination is to trigger the payment of disability benefits, which can be applied as a credit to the monthly amount being paid by the private disability insurer.  That determination, made by an independent, outside agency, does not relate specifically to the provision of health insurance benefits, as is being sought herein.

Just as the defendant in *Poole*'s failure to provide the plaintiff with notice of the availability of a COBRA disability extension excused the plaintiff's notice requirement obligations, so too here,

Salesforce.com's failure to notify Mr. Lorain of the availability of a COBRA disability extension should excuse Mr. Lorain from having to obtain an SSA disability determination, particularly given Salesforce.com's own selected disability insurance provider determined Mr. Lorain to be disabled. Furthermore, as discussed in *Martelon*, *supra*, an SSA determination is not legal authority and not jurisdictional in this context. At best it is evidence that, depending on the context, can be conclusive or persuasive on the issue of disability. Here, whether Mr. Lorain is disabled is not even in dispute and thus an SSA determination would be inconsequential and a waste of time for all parties.

Mr. Lorain needs medical insurance whether or not he is disabled. It is only defendant's choice to self-insure that stands in his way. No employer would object to an extension of health benefits for its former employee unless it had a significant payment or co-payment feature. So long as his temporary disability continues, and as long as it is a disqualifying pre-existing condition, Mr. Lorain will be unable to obtain replacement medical insurance, even at a higher price.

To require Mr. Lorain to qualify for social security benefits and to meet its stringent procedures for a *temporary* disability determination of this nature, or wait many months to obtain a determination from the Social Security Administration while Salesforce.com denies Mr. Lorain continued medical coverage would be unduly burdensome under the subject time constraints. Plaintiff is requesting this Court to find that 29 U.S.C. § 1162(2)(viii)'s SSA determination requirement is *de facto* satisfied by his private insurer's prior determination and requests an 11 month extension, especially if his insurance ends December 31, 2011.

Plaintiff requests the court be mindful of the equitable principles that underlie his need for this declaratory relief. Salesforce.com forced Mr. Lorain from the workplace by its draconian interpretation requiring him to be at 100%, with or without accommodation. That is not the law. Under the ADA a disabled employee or a post-surgical employee should only be required to perform at a reasonable level and not as if he were 100%. That discriminatory demand is the primary reason Mr. Lorain remained out of the workplace. The ability or efforts of the employer to accommodate him is not a relevant factual determination that must be made to decide the subject request. Whether the employer did anything or everything in that regard does not change the fact Mr. Lorain has been fired, and his former employer has not yet agreed to apply 18 months of medical benefits based upon that qualifying event.

The workforce at Salesforce.com is quite young and thus relatively healthy.  The company made an election to self-insure for its employees rather than provide a medical plan from an outside insurer.  Mr. Lorain, who is in his late fifties, had become expensive to maintain due to his two corneal transplant surgeries and other needed medical care.  With the prospect of continuing optical treatment and the specter of future corrective surgical procedures, Mr. Lorain's employer decided to fire him, even after he had filed a charge of disability discrimination with the EEOC.  Now he is disabled and unemployed, with a fair chance he will need further expensive medical treatment in the future, he cannot purchase medical insurance.   Seeking equity from an employer that terminated him wrongfully, he is asking his former employer to allow him to continue medical coverage at his expense.

DATED: October 27, 2011                    Respectfully submitted,


                                           /s/  Ellen C. Dove
                                             ELLEN C. DOVE
                                             Attorney for Plaintiff

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
DECLARATORY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16 _____

17 _____

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
DECLARATORY JUDGMENT